# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN ELLIS PORTER, | CASE NO. 1:10-CV-01500-DLB PC |
| Plaintiff, | ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM WITH LEAVE TO FILE AMENDED COMPLAINT |
| v. | |
| CHERYLEE WEGMAN, et al., | (DOC. 1) |
| Defendants. | RESPONSE DUE WITHIN 30 DAYS |

## Screening Order

**I.   Background**

Plaintiff Brian Ellis Porter ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Plaintiff initiated this action by filing his complaint on August 19, 2010. Doc. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or

appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not. *Id.*

## II.   Summary Of Complaint

Plaintiff is currently incarcerated at Kern Valley State Prison ("KVSP") in Delano, California, where the events giving rise to this action occurred. Plaintiff names as Defendants: Cherylee Wegman, Community Resource/Partnership Manager of KVSP; Matthew Cate, Secretary of CDCR; Ben Rice, Secretary of Legal Affairs of CDCR; Bruce Slavin, General Counsel of CDCR; Barry Smith, Community Resource Manager of CDCR; Kelly Harrington, Warden of KVSP; Reba Grissom, Associate Warden of KVSP; Tom Arlitz, Associate Warden of KVSP; Mark Howard, Food Manager of KVSP; Whitehead, lieutenant of KVSP; Francisco Diaz, Chaplain of KVSP; Daniel Mehlman, former Jewish Chaplain of KVSP; and Jessica Avery, Vocational Instructor of KVSP.

Plaintiff alleges the following. Plaintiff is a practicing member of the House of Yahweh religion. Plaintiff is required to observe for 8 days the Passover and Feast of Unleavened Bread. Plaintiff cannot eat food that contains or has come in contact with leaven/yeast during this time. In 2008, Plaintiff applied to receive Kosher meals and was approved by Defendants Mehlman and Wegman. On November 21, 2008, Defendant Wegman circulated a memo to Defendants Arlitz, Diaz, and Mehlman, which stated that the House of Yahweh was a religious hate group.

In February 10, 2009, Plaintiff and other House of Yahweh inmates in KVSP submitted a religious event package for April 10 through April 17 of 2009. This was after Defendant Wegman had denied Plaintiff's first religious event package for failure to reference a legitimate

2

1  religious holiday.  Plaintiff did not hear from Defendant Wegman for over two months.

2        Plaintiff and other House of Yahweh members attempted to contact Defendant Wegman
3  by mail with a letter and copy circulated through Defendant Diaz, in order to arrange a meeting.
4  Defendant Diaz did not schedule any meeting and did not relay any messages to Defendant
5  Wegman.

6        Because neither Defendant Diaz nor Defendant Wegman responded, Plaintiff and other
7  House of Yahweh inmates wrote letters to Defendant Mehlman as the Jewish Chaplain regarding
8  the religious event package.  Defendant Mehlman failed to relay these messages to Defendant
9  Wegman, and failed to report Defendant Wegman.  Defendant Mehlman knew that Plaintiff and
10 House of Yahweh inmates would not be fed their religiously required meals.

11       Plaintiff and other House of Yahweh inmates then wrote letters to Defendant Matthew
12 Cate, and circulated copies to Defendants Ben Rice, Bruce Slavin, Baary Smith, Kelly
13 Harrington, and Tom Arlitz complaining of Defendant Wegman's religious discrimination and
14 failure to provide a response regarding the religious event package.  Plaintiff received no direct
15 response from these Defendants.  However, Defendant Reba Grissom responded to Plaintiff's
16 letter by stating that Plaintiff should file this issue as a 602 inmate appeal.

17       On April 7, 2009, Plaintiff received a religious diet card for a vegetarian diet, signed and
18 authorized by Defendant Wegman.  Plaintiff had applied only for, and previously received, the
19 Jewish Kosher diet program.

20       On April 9, 2009, Plaintiff contacted Defendant Mark Howard regarding the religious
21 event package and Plaintiff's dietary requests.  Defendant Howard told Plaintiff that he would
22 see what he could do.  Plaintiff did not hear from Defendant Howard until April 13, 2009.

23       On April 10, 2009, at sunset, the religious holiday of Yahweh's Passover and Feast of
24 Unleavened Bread began, lasting until sunset of April 17, 2009.  Plaintiff was starved by KVSP
25 staff, receiving only two meals that were extremely inadequate for proper nourishment.  Plaintiff
26 contacted Defendant Howard on April 13, 2009 and informed him that Plaintiff had gone without
27 food for three consecutive days and that he would continue to be starved unless the religious
28 event package or Plaintiff's Jewish Kosher diet program is honored.  Defendant Howard

3

informed Plaintiff that Defendant Wegman had removed Plaintiff from the diet and that Defendant Wegman had provided him with the Religious Event Package that indicated House of Yahweh members were only to receive one meal for one day on April 17, 2009. Defendant Howard then produced the memorandum and event package and told Plaintiff that unless he had other paperwork, there was nothing he could do. Plaintiff requested that Defendant Howard contact his supervisor or Defendant Wegman's supervisor. Defendant Howard failed to contact anyone.

Plaintiff then went to his vocational class and informed Defendant Avery that he was being starved through negligence and misconduct by Defendants Wegman and Howard. Defendant Avery told Plaintiff, "More work, less complaining." Defendant Avery did not report this negligence and misconduct to others.

Plaintiff then contacted Defendant Whitehead. Plaintiff informed Defendant Whitehead that none of his custody staff had reported Plaintiff was suffering from starvation. Defendant Whitehead then attempted to call Defendant Wegman, but could not reach her. Defendant Whitehead took no further action.

Defendant Wegman contacted Plaintiff on April 15, 2009. Plaintiff's parents had called the institution concerning Plaintiff being starved. Defendant Wegman admitted that his rights were being violated. The religious event package had apparently been misplaced. Defendant Wegman blamed the lack of communication on her workload. Defendant Wegman promised to get Plaintiff proper food that adhered to Plaintiff's religious mandates.

Plaintiff then received one adequate meal the evenings of April 15 and April 16. On April 17, 2009, Plaintiff did not receive a meal until the evening. In the Facility B Chapel, food was provided pursuant to the Religious Event Package prepared by Defendant Wegman. The service of the religious event was interrupted by custody and culinary staff. No House of Yahweh inmate was willing to eat the food because no inmate could ensure that the food was religiously permissible to eat. Custody staff then ended the religious event. After sunset, several inmates were able to negotiate with custody staff to receive the food, as the religious event would have ended and the food restrictions were no longer required. Plaintiff also ate after sunset.

Plaintiff alleges a violation of the Free Exercise Clause and the Establishment Clause of the First Amendment, violation of the Eighth Amendment, and violation of RLUIPA. Plaintiff requests declaratory relief, monetary damages, preliminary and permanent injunction enjoining Defendants from inhibiting Plaintiff's ability to celebrate Yahweh's Passover and Feast of Unleavened Bread, appointment of counsel, and costs of suit.

## III.     Analysis

### A.     First Amendment - Free Exercise

#### 1.     Religious Event Package

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone v. Shabazz*, 482 U.S. 342 (1987)); *see Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Only beliefs which are both sincerely held and rooted in religious beliefs trigger the Free Exercise Clause. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (citing *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994)); *Callahan v. Woods*, 658 F. 2d 679, 683 (9th Cir. 1981)). Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one." *Id.* A second consideration is "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90 (internal quotations and citation omitted). A third consideration is "the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.*

Regarding Defendants Cate, Rice, Slavin, Smith, Harrington, Arlitz, Diaz, and Mehlman, Plaintiff fails to state a claim. Plaintiff alleges that he sent letters to these Defendants. However, Plaintiff fails to allege how these Defendants undertook actions which would demonstrate a

constitutional violation. Plaintiff must link each Defendant to an act that violates Plaintiff's constitutional or federal rights. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Allegations that Plaintiff sent letters to these Defendants is insufficient to state a claim for supervisory liability. The United States Supreme Court emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. *Iqbal*, 129 S. Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct. When the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Regarding Defendant Grissom, Plaintiff fails to state a claim. Defendant Grissom responded to Plaintiff's letter regarding his issues with Defendant Wegman's non-responsiveness by telling Plaintiff to file a 602 inmate appeal. There are no allegations which indicate that Defendant Grissom was responsible pursuant to supervisory liability. *Hansen*, 885 F.2d at 646; *Taylor*, 880 F.2d at 1045.

Regarding Defendant Wegman, Plaintiff has not sufficiently alleged a constitutional violation. Plaintiff alleges that Defendant Wegman had overlooked the religious event package by Plaintiff and other House of Yahweh inmates. It is unclear whether Plaintiff is alleging negligence on the part of Defendant Wegman. The Court does not find that negligence rises to the level of a deprivation of the First Amendment right to the free exercise of religion. The Ninth

6

Circuit has not squarely addressed the issue of whether or not negligence is sufficient to state a violation of the free exercise of religion.  Two district courts have found that negligence is not sufficient to state a valid claim for violation of an inmate's Free Exercise rights.  *See Lewis v. Mitchell*, 416 F. Supp. 2d 935 (S. D. Cal. 2005); *Shaheed v. Winston*, 885 F. Supp. 861 (E.D. Va. 1995), *aff'd* 161 F.3d 3 (4th Cir. 1998).  In *Lewis*, the court found that "prohibiting" within the meaning of the Free Exercise Clause "suggests a conscious act," rather than mere negligence.  416 F. Supp. 2d at 944 (citing *Shaheed*, 885 F. Supp. at 868).  The *Lewis* court thus found that an inmate plaintiff must assert more than negligence to state a valid claim for the violation of an inmate's Free Exercise rights.  *Id.*  Instead, "[a plaintiff] must allege conscious or intentional acts that burden his free exercise of religion."  *Id.*  This Court adopts the *Lewis* court's sound rationale.[1]  Thus, Plaintiff fails to state a cognizable claim against Defendant Wegman for violation of the Free Exercise Clause of the First Amendment regarding the religious event package.

Regarding Defendants Whitehead, Howard, and Avery, Plaintiff fails to state a claim.  Plaintiff informed these Defendants that he was being deprived of religiously acceptable meals.  Plaintiff contends that these Defendants had a duty to report Defendant Wegman's negligence and misconduct.  Even if these Defendants had such a duty, the alleged facts do not demonstrate that Defendants Whitehead, Howard, and Avery violated Plaintiff's First Amendment rights.  Based on Plaintiff's allegations, Defendant Avery was not responsible for the alleged deprivation of Plaintiff's religious diet.  Based on Plaintiff's allegations, Defendant Whitehead was not responsible for the deprivation of Plaintiff's religious diet.  Based on Plaintiff's allegations, Defendant Howard, while responsible for the food provided to prisoners at KVSP, was not responsible for the type of food available for inmates for religious purposes.  As stated previously, Plaintiff must link each Defendant to an act that violates Plaintiff's constitutional or federal rights.  *Long*, 442 F.3d at 1185.  Plaintiff must allege conscious or intentional acts that

---

[1] The United States Supreme Court has found that negligence does not give rise to a constitutional violation in the context of the Due Process Clause of the Fourteenth Amendment.  *Daniels v. Williams*, 474 U.S. 327, 335-36 (1986).  The *Lewis* court similarly followed the Supreme Court's line of reasoning with respect to the free exercise of religion.

burden his free exercise of his religion. *Lewis*, 416 F. Supp. 2d at 944.

### 2. Kosher Diet

Plaintiff alleges a violation of the Free Exercise Clause when Defendant Wegman assigned Plaintiff a religious vegetarian diet as opposed to the Jewish kosher diet. Plaintiff fails to allege sufficient facts which indicate how the vegetarian diet violated Plaintiff's free exercise of his religion. Plaintiff complains that he was removed from the Kosher diet, and that the Kosher diet would have met his religious dietary needs. However, if the vegetarian diet met Plaintiff's religious dietary requirements, then Defendant Wegman did not violate Plaintiff's rights. *See McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) (per curiam) ("Inmates . . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion.").

### B. First Amendment - Establishment Clause

The First Amendment of the United States Constitution proscribes, in part, any law "respecting an establishment of religion." In its evaluation of the contours of the Establishment Clause, the Supreme Court has repeatedly determined that prison inmates retain the protections afforded them by the First Amendment. *O'Lone*, 482 U.S. at 348, *superseded on other grounds by statute*, Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, *et seq*. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). When the state action facially shows a preference for one religion over others, it must be analyzed under strict scrutiny. *Id.*; *see also Hernandez v. Commissioner*, 490 U.S. 680, 695 (1989).

Plaintiff fails to allege a violation of the Establishment Clause. Plaintiff fails to allege facts which demonstrate that any state action showed a preference for one religion over others.

### C. Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are

sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient to support a claim that officials knew of and disregarded a substantial risk of serious harm to him. *E.g.*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Mere negligence on the part of the official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost*, 152 F.3d at 1128.

Here, Plaintiff fails to state a claim. Plaintiff contends that he was starved from April 10 to April 17, receiving only two adequate meals. However, it is unclear whether Plaintiff starved himself by choosing not to eat the food available because of religious reasons. If food was available, and Plaintiff chose not to eat it, then Defendants did not disregard a substantial risk to of serious harm to Plaintiff.

**D.    RLUIPA**

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>     (1) is in furtherance of a compelling government interest; and
>     (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. RLUIPA "mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard under *Turner*." *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (citing *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005)). The Supreme Court has noted "RLUIPA . . . protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).

RLUIPA defines religious exercise to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

9

1  Here, Plaintiff fails to state a claim for violation of RLUIPA. As stated previously, Plaintiff appears to be alleging negligence on the part of Defendants in denying Plaintiff's religious practice. Plaintiff fails to allege a policy or regulation that was implemented to substantially burden Plaintiff's religious exercise. *See Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006) (holding that simple negligence does not meet the fault requirement under section 3 of RLUIPA).

**IV.     Conclusion And Order**

Plaintiff fails to state any cognizable claims against any Defendants. The Court will provide Plaintiff with an opportunity to file a first amended complaint curing the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff decides to amend, Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. *Iqbal*, 129 S. Ct. at 1949. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," L. R. 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King*, 814 F.2d at 567 (citing to *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981)); *accord Forsyth*, 114 F.3d at 1474.

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's complaint is dismissed for failure to state a claim, with leave to file a first amended complaint within **thirty (30) days** from the date of service of this

order; and

3. If Plaintiff fails to comply with this order, the Court will dismiss this action for failure to obey a court order and failure to state a claim.

IT IS SO ORDERED.

Dated: **April 22, 2011**        **/s/ Dennis L. Beck**
                                 UNITED STATES MAGISTRATE JUDGE