# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| BRIAN ELLIS PORTER, | Case No. 1:10-cv-01500-LJO-DLB PC |
|---|---|
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS** |
| v. | |
| CHERYLEE WEGMAN, et al., | ECF No. 61 |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

## I.  Background

Plaintiff Brian Ellis Porter ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983. On September 25, 2012, this case was consolidated with *Porter v. Wegman, et al.*, Case No. 1:11-cv-02106-MJS (E.D. Cal.). On October 18, 2012, the Court ordered Plaintiff to file a Third Amended Complaint, incorporating all the pleadings in both actions. ECF No. 59. On December 17, 2012, Plaintiff filed his Third Amended Complaint.[1] ECF No. 61.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

---

[1] The Court's docket indicates that this document was labeled as the Second Amended Complaint. However, a previous Second Amended Complaint was filed on September 4, 2012. To avoid confusion, the Court will refer to the Amended Complaint filed on December 17, 2012 as Plaintiff's Third Amended Complaint.

1

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." *Id.* § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*

## II.     Summary of Third Amended Complaint

Plaintiff was incarcerated at Kern Valley State Prison ("KVSP") in Delano, California, where the events giving rise to this action occurred. Plaintiff names as Defendants: community resource/partnership manager Cherylee Wegman; secretary of CDCR Matthew Cate; warden of KVSP M. D. Biter; chief medical officer S. Lopez; associate warden J. Castro; registered nurse E. Lunsford; licensed vocational nurse Grewal; and Does 1 through 100.

Plaintiff alleges the following. Plaintiff is a member of the religion called House of Yahweh ("HOY"). Plaintiff believes that living by the 613 laws of Yahweh, which are derived from the first five books of the Hebrew Bible, is necessary for salvation. In adherence with those laws, Plaintiff is required to keep all Sabbath days, eat only clean/kosher foods, and observe all Holy Feast Days, which includes Yahweh's Passover Feast of Unleavened Bread ("HOY Passover"). Second Am. Compl. ("TAC") ¶ 13. Plaintiff is also mandated to eat only a kosher diet according to the scriptures. TAC ¶ 16.

The HOY Passover lasts eight days, requires HOY practitioners to destroy all leavened foods in their possession, and not to eat foods containing leaven, or come in contact with food that has been contaminated with leaven. TAC ¶ 17. During the HOY Passover, HOY observers must eat

some amount of unleavened bread on each day, and eat some portion of meat from a Passover sacrifice the night beginning this religious event. TAC ¶ 18.

In 2008, Plaintiff applied for and received kosher meals as part of his religious diet. TAC ¶ 19. Plaintiff was granted kosher meal diet because the Jewish Chaplain determined that Plaintiff's doctrines are the same as the Jewish doctrine regarding dietary needs. TAC ¶ 19. On November 21, 2008, Defendant Wegman circulated a memo that referred to the HOY as a religious hate group. Plaintiff subsequently never received kosher meals. TAC ¶ 20.

During Passover, the Jewish Kosher Diet Program provided meals that adhered to all the laws of the HOY governing the HOY Passover. TAC ¶ 21. Plaintiff and other HOY members submitted a religious event package specifically to receive reasonable accommodations for observance of the HOY Passover, taking place from April 10, 2009 to April 17, 2009. TAC ¶ 21. Despite submitting all necessary forms and information, the HOY did not receive any response concerning the religious event. TAC ¶ 23.

On April 7, 2009, Plaintiff received a religious diet card for a vegetarian diet, which was authorized by Defendant Wegman. TAC ¶ 24. The vegetarian diet does not meet Plaintiff's religious dietary needs, namely: that he must eat the meat of the sacrifice on Passover night; eating unleavened bread during the HOY Passover; heated meals on Sabbath; and insured that it was kosher. TAC ¶ 25. When Plaintiff did not receive the expected religious meals for the HOY Passover, Plaintiff believed it to be complications from the previous year, but eventually expected to receive them. TAC ¶ 27. Plaintiff was aware that prison policy dictates that if a regular meal is taken by the inmate, the inmate is removed from the religious event list and subject to possible discipline for manipulation of staff. TAC ¶ 27.

On April 15, 2009, Plaintiff, having starved for five days, was contacted by Defendant Wegman as a result of Plaintiff's family contacting Defendant Wegman's supervisors. TAC ¶ 28. Plaintiff told Defendant Wegman the necessity of the requested religious meals and/or a kosher diet and explained the significance of the HOY Passover. TAC ¶ 28. Defendant Wegman admitted that Plaintiff and the HOY inmates' rights were being violated and she promised to provide Plaintiff with proper food. TAC ¶ 28. On April 15, 2009, in the evening, Plaintiff received a meager kosher meal.

TAC ¶ 29.  On April 16, 2009, Plaintiff received the same meager kosher meal.  TAC ¶ 30.

On April 17, 2009, Plaintiff participated in a special event in the Facility B chapel.  TAC ¶ 31.  The food provided, however, did not meet the religious specifications as requested by the HOY inmates in the Event Package.  TAC ¶ 31.  No HOY inmates were willing to eat the food.  TAC ¶ 31.  The food was brought by prison staff at approximately 6:30 p.m., during the Sabbath services.  TAC ¶ 32.  The HOY inmates refused to eat the food, and staff then ended the service immediately and ordered all inmates back to their housing units.  TAC ¶ 32.  Plaintiff and other HOY inmates were able to get the food after sunset, at which time it had no religious significance.  TAC ¶ 33.

Plaintiff and HOY inmates filed inmate grievances complaining of the lack of reasonable accommodation.  TAC ¶ 34.  Defendant Wegman responded by stating that the Passover celebration described in the California Code of Regulations, Title 15, and Jewish Kosher Diet Program are exclusively for Jews.  TAC ¶ 34.

Around the middle of January 2010, HOY inmates submitted another Religious Event Package and again requested reasonable accommodations for the observance of Passover.  TAC ¶ 35.  Plaintiff later received a vegetarian diet chrono, approved by Defendant Wegman and the Native American chaplain, via institutional mail, despite being initially approved by the Jewish chaplain for the Jewish Kosher Diet Program.  TAC ¶ 37.

On March 30, 2010, at 9:00 a.m., Plaintiff was called to the special religious event, despite it not being properly scheduled for sunset.  TAC ¶ 39.  At approximately, 11:00 a.m., a meal was served that had no religious significance.  TAC ¶ 40.  Plaintiff alerted both custody and medical staff that he was refusing to eat because he was not receiving his necessary religious meals.  TAC ¶ 41.  As a result of not eating, Plaintiff passed out in his cell on the morning of April 6, 2010.  TAC ¶ 43.  Plaintiff's cellmate alerted both custody and medical staff, but no action was taken.  TAC ¶ 43.

Plaintiff later passed out at approximately 3:00 p.m. in the shower, hitting his head.  TAC ¶ 44.  Plaintiff was taken by medical staff to the clinic by wheelchair.  TAC ¶ 44.  Defendant Grewal, the nurse, did not check Plaintiff's head or neck for possible injuries, or record Plaintiff's status.  TAC ¶ 45.  Defendant Grewal only asked how Plaintiff felt at the moment so she could transcribe a medical request slip for Plaintiff to come at a later date.  TAC ¶ 46.  Defendant Grewal stated that

4

there was nothing she could do because there was no RN or doctor available. TAC ¶ 46. Defendant Grewal told Plaintiff that once he was able to regain his strength and balance, he was to return to his housing unit. TAC ¶ 46. Plaintiff had to leave before the institutional count, which was within the hour, so he gingerly walked back. TAC ¶ 46. Plaintiff suffered multiple days of nausea, dizziness, memory loss, and headaches following his head injury. TAC ¶ 47. In April 2011, Plaintiff was in the same situation, wherein KVSP failed to provide religious meals for Plaintiff's observance of Passover. TAC ¶ 51.

Plaintiff contends a violation of the Free Exercise Clause of the First Amendment for denial of reasonable accommodations regarding the observance of HOY Passover and denial of the Jewish Kosher Diet Program, violation of the Religious Land Use and Institutionalized Persons Act of 2000, violation of the Eighth Amendment, discrimination against his religion in violation of the Equal Protection Clause of the Fourteenth Amendment, and the Federal Grant Statutes (42 U.S.C. § 2000d and § 3789d(c)(1)).

Plaintiff request as relief: declaratory judgment, preliminary and permanent injunction, compensatory and punitive damages, and costs of suit.

**III. Analysis**

    **A. First Amendment – Free Exercise of Religion**

The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone v. Shabazz*, 482 U.S. 342 (1987)); *see Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Only beliefs which are both sincerely held and rooted in religious beliefs trigger the Free Exercise Clause. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (citing *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994)); *Callahan v. Woods*, 658 F. 2d 679, 683 (9th Cir. 1981)). Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to

1  justify it," and "the governmental objective must itself be a legitimate and neutral one." *Id.* A
2  second consideration is "whether there are alternative means of exercising the right that remain open
3  to prison inmates." *Id.* at 90 (internal quotations and citation omitted). A third consideration is "the
4  impact accommodation of the asserted right will have on guards and other inmates, and on the
5  allocation of prison resources generally." *Id.* "Finally, the absence of ready alternatives is evidence
6  of the reasonableness of a prison regulation." *Id.*

Plaintiff has stated a cognizable First Amendment claim against Defendant Wegman for denial of a religious accommodation for HOY Passover and denial of the Jewish Kosher diet from April 2009 through April 2011.

Plaintiff alleges that Defendants Biter and Castro adjudicated Plaintiff's inmate appeals in favor of Defendant Wegman and against Plaintiff. Plaintiff includes the inmate appeals as exhibits in support of the TAC. Based on a review of the inmate appeals, Defendant Biter, on May 20, 2010, found that Defendant Wegman was in compliance with CDCR policy with regards to Plaintiff's exercise of his religion. TAC, Ex. G. Plaintiff alleges sufficient facts to state a First Amendment claim against Defendant Biter for denial of a religious accommodation for HOY Passover and denial of Jewish Kosher diet for incidents from May 20, 2010 to April 2011 only.

Based on the submitted inmate appeal, Defendant Castro found that Defendant Wegman properly denied Plaintiff participation in the Jewish Kosher Diet Program and provided sufficient accommodation as to the religious holy days. TAC, Ex. H. Plaintiff alleges sufficient facts to state a First Amendment claim against Defendant Biter for denial of a religious accommodation for HOY Passover and denial of Jewish Kosher diet for incidents from August 3, 2010 to April 2011 only.

Plaintiff fails to state a claim against Defendant Cate. Plaintiff contends that as the final decision-maker for the Director's Level, Defendant Cate was responsible for the denials of Plaintiff's exercise of his religion. However, a review of Plaintiff's exhibits, which included the Director's Level responses, indicates that Defendant Cate did not adjudicate any of Plaintiff's inmate appeals. The term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. *Iqbal*, 556 U.S. at 677. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at 676.

Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct. *Id.* at 677. When the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff fails to allege facts which indicate that Defendant Cate personally participated in alleged constitutional deprivations or knew of violations and failed to act.

### B. Religious Land Use and Institutionalized Persons Act

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. RLUIPA "mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard under *Turner*." *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (citing *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005)). The Supreme Court has noted "RLUIPA . . . protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). RLUIPA defines religious exercise to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

Plaintiff states a RLUIPA claim against Defendants Wegman, Biter, and Castro for the allegations stated with regards to Plaintiff's First Amendment claim. Plaintiff fails to state a claim against Defendant Cate because he failed to allege facts which indicate personal liability by the Defendant. *Taylor*, 880 F.2d at 1045.

### C. Equal Protection

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). A prisoner is entitled "to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Shakur*, 514 F.3d at 891 (quoting *Cruz v. Beto*, 405 U.S. 319, 321-22 (1972) (per curiam)). To state a claim, a plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. *Cruz*, 405 U.S. at 321-22; *Shakur*, 514 F.3d at 891; *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part on other grounds*, *Shakur*, 514 F.3d at 884-85.

Plaintiff states an Equal Protection claim against Defendant Wegman, Castro, and Biter for denial of the opportunity to receive reasonable accommodations as offered to similarly situated inmate religious groups. Plaintiff fails to state a claim against Defendant Cate because he failed to allege facts which indicate personal liability by the Defendant. *Taylor*, 880 F.2d at 1045.

### D. Eighth Amendment

Plaintiff contends that Defendants Grewal, Lunsford, Lopez, and Does 1 through 100 acted with deliberate indifference with regards to Plaintiff's health and safety. The Eighth Amendment prohibits cruel and unusual punishment. "The Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and citation omitted). Prison officials must provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation

omitted)).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ."  *Id.* at 837.

"Deliberate indifference is a high legal standard."  *Toguchi*, 391 F.3d at 1060.  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff states an Eighth Amendment claim against Defendant Grewal.  Plaintiff alleges a serious harm with regards to Plaintiff having passed out and fallen, suffering a head injury.  Plaintiff alleges facts which indicate that Defendant Grewal knew of and disregarded an excessive risk of serious harm.

Plaintiff fails to state a claim against Defendants Lunsford, Lopez, and Does 1 through 100.  Plaintiff fails to allege facts which indicate that these Defendants were aware of Plaintiff having a serious harm and disregarding it.

**E.   42 U.S.C. § 2000d**

Plaintiff contends a violation of 42 U.S.C. § 2000d, which states, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  Plaintiff fails to allege any discrimination on the ground of race, color, or national origin, and thus fails to state a claim.

**F.   42 U.S.C. § 3789d(c)(1)**

Plaintiff contends a violation of 42 U.S.C. § 3789d(c)(1), which states, "No person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any programs or activity funded in whole or in part with funds made available under this

chapter." Section 3789d concerns discriminatory behavior of law enforcement agencies that receive funding under the United States Department of Justice, Office of Justice Programs ("OJP"). *Jones v. Jones*, 2004 WL 3214457, *4 (E.D. Va. Jun. 15, 2004). An aggrieved person may bring a civil action after exhaustion of administrative remedies, which involves filing an administrative complaint with the OJP or any other administrative enforcement agency. *Sims v. Montgomery County Comm'n*, 873 F. Supp. 585, 608 (M.D. Ala.1994) (citing 42 U.S.C. § 3789d(c)(4)(A)). Plaintiff fails to allege that the CDCR receives federal funding from OJP or that he exhausted administrative remedies as required, and thus fails to state a claim.

## IV.     Conclusion and Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceeds against Defendants Wegman, Castro, and Biter for violation of the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000, and the Equal Protection Clause of the Fourteenth Amendment, as stated herein;

2. This action proceeds against Defendant Grewal for deliberate indifference to a serious medical need in violation of the Eighth Amendment; and

3. All other claims and Defendants be dismissed for failure to state a claim upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections

///
///
///
///
///
///
///

with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A party may respond to another party's objections by filing a response within **fourteen (14) days** after being served with a copy of that party's objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 9, 2013**                                       /s/ *Dennis L. Beck*
                                                             UNITED STATES MAGISTRATE JUDGE