# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN ELLIS PORTER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WEGMAN, et al.,<br><br>　　　　Defendants.<br>_____/ | Case No. 1:10-cv-01500 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>[ECF No. 103]<br><br>OBJECTION DEADLINE: THIRTY DAYS |

## I.  **Background**

Plaintiff Brian Ellis Porter ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action. On September 25, 2012, this case was consolidated with <u>Porter v. Wegman, et al.</u>, Case No. 1:11-cv-02106-MJS (E.D. Cal.). On October 18, 2012, the Court ordered Plaintiff to file a Third Amended Complaint, incorporating all the pleadings in both actions. On December 17, 2012, Plaintiff filed his Third Amended Complaint.[1] Pursuant to the Court's July 18, 2013, order, this action is proceeding against (1) Defendants Wegman, Castro, and Biter for violation of the Free Exercise Clause of the First Amendment, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), and the Equal Protection Clause of the Fourteenth Amendment; and (2) Defendant Grewal for deliberate indifference to a serious

---

[1] The Court's docket indicates that this document was labeled as the Second Amended Complaint. However, a previous Second Amended Complaint was filed on September 4, 2012. To avoid confusion, the Court will refer to the Amended Complaint filed on December 17, 2012, as Plaintiff's Third Amended Complaint.

medical need in violation of the Eighth Amendment.

On July 28, 2014, Defendants filed a motion for partial summary judgment. (ECF No. 103.) On October 29, 2014, Plaintiff filed an opposition. (ECF No. 118.) Defendants filed a reply on November 4, 2014. (ECF No. 119).

On October 15, 2014, Defendants filed a motion to modify the scheduling order to allow supplemental briefing in support of the motion for summary judgment. (ECF No. 116.) Defendants had not sought judgment with respect to Plaintiff's RLUIPA claim because Plaintiff had not yet received the Kosher diet that formed the essence of his RLUIPA claim. However, on October 6, 2014, Defendants state Plaintiff had begun receiving a Kosher diet. Accordingly, Defendants sought to include argument that Plaintiff's motion for injunctive relief is now moot, and therefore, the motion for summary judgment would be dispositive if granted. Plaintiff opposed the motion on December 22, 2014. (ECF No. 123.) On December 29, 2014, Defendants filed a reply to the opposition. (ECF No. 124.) The Court granted the motion to modify the scheduling order on January 16, 2015. (ECF No. 125.) On February 17, 2015, Defendants filed a supplemental brief in support of the motion for summary judgment. (ECF No. 126.) On April 17, 2015, Plaintiff filed an opposition to the supplemental brief. (ECF No. 130.) Defendants filed a reply on April 22, 2015. (ECF No. 131.)

The motion for summary judgment has been submitted upon the record without oral argument.[2] Local Rule 230(*l*). For the reasons set forth below, the Court recommends that Defendants' motion be granted.

## II.   Legal Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position,

---

[2] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

1  whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular
2  parts of materials in the record, including but not limited to depositions, documents, declarations,
3  or discovery; or (2) showing that the materials cited do not establish the presence or absence of a
4  genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.
5  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the
6  record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen
7  v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v.
8  Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

9  Defendant does not bear the burden of proof at trial and in moving for summary judgment,
10 he need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp.
11 Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S.
12 317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to
13 Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re
14 Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to
15 "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty
16 Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

17 However, in judging the evidence at the summary judgment stage, the Court may not make
18 credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509
19 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all
20 inferences in the light most favorable to the nonmoving party and determine whether a genuine
21 issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v.
22 City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted),
23 *cert. denied*, 132 S.Ct. 1566 (2012).  The Court determines *only* whether there is a genuine issue
24 for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se
25 prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations
26 omitted).

27
28

### III. Plaintiff's Claim[3]

Plaintiff was incarcerated at Kern Valley State Prison ("KVSP") in Delano, California, where the events giving rise to this action occurred. Plaintiff is proceeding against the following Defendants: community resource/partnership manager Cherylee Wegman; warden of KVSP M. D. Biter; associate warden J. Castro; and licensed vocational nurse Grewal.

Plaintiff alleges the following. Plaintiff is a member of the religion called House of Yahweh ("HOY"). Plaintiff believes that living by the 613 laws of Yahweh, which are derived from the first five books of the Hebrew Bible, is necessary for salvation. In adherence with those laws, Plaintiff is required to keep all Sabbath days, eat only clean/kosher foods, and observe all Holy Feast Days, which includes Yahweh's Passover Feast of Unleavened Bread ("HOY Passover"). Pl.'s Am. Compl. ("TAC") ¶ 13. Plaintiff is also mandated to eat only a kosher diet according to the scriptures. TAC ¶ 16.

The HOY Passover lasts eight days, requires HOY practitioners to destroy all leavened foods in their possession, and not to eat foods containing leaven, or come in contact with food that has been contaminated with leaven. TAC ¶ 17. During the HOY Passover, HOY observers must eat some amount of unleavened bread on each day, and eat some portion of meat from a Passover sacrifice the night beginning this religious event. TAC ¶ 18.

In 2008, Plaintiff applied for and received kosher meals as part of his religious diet. TAC ¶ 19. Plaintiff was granted kosher meal diet because the Jewish Chaplain determined that Plaintiff's doctrines are the same as the Jewish doctrine regarding dietary needs. TAC ¶ 19. On November 21, 2008, Defendant Wegman circulated a memo that referred to the HOY as a religious hate group. Plaintiff subsequently never received kosher meals. TAC ¶ 20.

During Passover, the Jewish Kosher Diet Program provided meals that adhered to all the laws of the HOY governing the HOY Passover. TAC ¶ 21. Plaintiff and other HOY members

---

[3] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible.

submitted a religious event package specifically to receive reasonable accommodations for observance of the HOY Passover, taking place from April 10, 2009 to April 17, 2009.  TAC ¶ 21. Despite submitting all necessary forms and information, the HOY did not receive any response concerning the religious event.  TAC ¶ 23.

On April 7, 2009, Plaintiff received a religious diet card for a vegetarian diet, which was authorized by Defendant Wegman.  TAC ¶ 24.  The vegetarian diet does not meet Plaintiff's religious dietary needs, namely: that he must eat the meat of the sacrifice on Passover night; eating unleavened bread during the HOY Passover; heated meals on Sabbath; and insured that it was kosher.  TAC ¶ 25.  When Plaintiff did not receive the expected religious meals for the HOY Passover, Plaintiff believed it to be complications from the previous year, but eventually expected to receive them.  TAC ¶ 27.  Plaintiff was aware that prison policy dictates that if a regular meal is taken by the inmate, the inmate is removed from the religious event list and subject to possible discipline for manipulation of staff.  TAC ¶ 27.

On April 15, 2009, Plaintiff, having starved for five days, was contacted by Defendant Wegman as a result of Plaintiff's family contacting Defendant Wegman's supervisors.  TAC ¶ 28. Plaintiff told Defendant Wegman the necessity of the requested religious meals and/or a kosher diet and explained the significance of the HOY Passover.  TAC ¶ 28.  Defendant Wegman admitted that Plaintiff and the HOY inmates' rights were being violated and she promised to provide Plaintiff with proper food.  TAC ¶ 28.  On April 15, 2009, in the evening, Plaintiff received a meager kosher meal.  TAC ¶ 29.  On April 16, 2009, Plaintiff received the same meager kosher meal.  TAC ¶ 30.

On April 17, 2009, Plaintiff participated in a special event in the Facility B chapel.  TAC ¶ 31.  The food provided, however, did not meet the religious specifications as requested by the HOY inmates in the Event Package.  TAC ¶ 31.  No HOY inmates were willing to eat the food. TAC ¶ 31.  The food was brought by prison staff at approximately 6:30 p.m., during the Sabbath services.  TAC ¶ 32.  The HOY inmates refused to eat the food, and staff then ended the service immediately and ordered all inmates back to their housing units.  TAC ¶ 32.  Plaintiff and other HOY inmates were able to get the food after sunset, at which time it had no religious significance.

TAC ¶ 33.

Plaintiff and HOY inmates filed inmate grievances complaining of the lack of reasonable accommodation. TAC ¶ 34. Defendant Wegman responded by stating that the Passover celebration described in the California Code of Regulations, Title 15, and Jewish Kosher Diet Program are exclusively for Jews. TAC ¶ 34.

Around the middle of January 2010, HOY inmates submitted another Religious Event Package and again requested reasonable accommodations for the observance of Passover. TAC ¶ 35. Plaintiff later received a vegetarian diet chrono, approved by Defendant Wegman and the Native American chaplain, via institutional mail, despite being initially approved by the Jewish chaplain for the Jewish Kosher Diet Program. TAC ¶ 37.

On March 30, 2010, at 9:00 a.m., Plaintiff was called to the special religious event, despite it not being properly scheduled for sunset. TAC ¶ 39. At approximately, 11:00 a.m., a meal was served that had no religious significance. TAC ¶ 40. Plaintiff alerted both custody and medical staff that he was refusing to eat because he was not receiving his necessary religious meals. TAC ¶ 41. As a result of not eating, Plaintiff passed out in his cell on the morning of April 6, 2010. TAC ¶ 43. Plaintiff's cellmate alerted both custody and medical staff, but no action was taken. TAC ¶ 43.

Plaintiff later passed out at approximately 3:00 p.m. in the shower, hitting his head. TAC ¶ 44. Plaintiff was taken by medical staff to the clinic by wheelchair. TAC ¶ 44. Defendant Grewal, the nurse, did not check Plaintiff's head or neck for possible injuries, or record Plaintiff's status. TAC ¶ 45. Defendant Grewal only asked how Plaintiff felt at the moment so she could transcribe a medical request slip for Plaintiff to come at a later date. TAC ¶ 46. Defendant Grewal stated that there was nothing she could do because there was no RN or doctor available. TAC ¶ 46. Defendant Grewal told Plaintiff that once he was able to regain his strength and balance, he was to return to his housing unit. TAC ¶ 46. Plaintiff had to leave before the institutional count, which was within the hour, so he gingerly walked back. TAC ¶ 46. Plaintiff suffered multiple days of nausea, dizziness, memory loss, and headaches following his head injury. TAC ¶ 47. In April 2011, Plaintiff was in the same situation, wherein KVSP failed to

provide religious meals for Plaintiff's observance of Passover. TAC ¶ 51.

Plaintiff contends a violation of the Free Exercise Clause of the First Amendment for denial of reasonable accommodations regarding the observance of HOY Passover and denial of the Jewish Kosher Diet Program, violation of the Religious Land Use and Institutionalized Persons Act of 2000, violation of the Eighth Amendment, discrimination against his religion in violation of the Equal Protection Clause of the Fourteenth Amendment, and the Federal Grant Statutes (42 U.S.C. § 2000d and § 3789d(c)(1)).

Plaintiff request as relief: declaratory judgment, preliminary and permanent injunction, compensatory and punitive damages, and costs of suit.

## IV.  Undisputed Facts[4]

Plaintiff is a California state prisoner housed at Kern Valley State Prison ("KVSP") in Delano, California. (ECF No. 61.) Defendant Wegman is the Community Partnership Manager at KVSP. (Wegman Decl. ¶ 2.) Defendant Wegman's responsibilities include planning, organizing, and directing community-based programs for inmates related to religion, art, services to communities, self-help groups, and volunteers. (Wegman Decl. ¶ 3.) At all times relevant, Defendant Castro was Associate Warden at KVSP. (Castro Decl. ¶ 2.) Defendant Castro's responsibilities included planning, organizing, directing, and coordinating all correctional, business management, work-training incentive, educational services and related programs within the prison. (Castro Decl. ¶ 3.) Defendant Biter is the Warden of KVSP, and his duties are to plan, organize, administer, direct, and coordinate all correctional, business management, work-training incentive, education, health care delivery and allied services and related programs within the institution; formulate and execute a progressive program for the care, treatment, training, discipline, custody, and employment of inmates; coordinate communications with headquarters and other departments; handle external relationships with governmental, legislative, community and business leaders at local and State levels; and provide executive leadership skills and management decisions in daily operations. (Biter Decl. ¶ 3.)

---

[4] Facts which are immaterial to resolution of Defendants' motion for summary judgment, unsupported by admissible evidence, and/or redundant are omitted.

7

In 2008, Plaintiff's request for a Kosher diet was approved by Defendant Wegman.[5] Wegman had recently accepted the position and did not know she was not authorized to approve Kosher diets for inmates, or that Kosher diets were reserved solely for Jewish inmates. When she learned of her mistake, she reauthorized Plaintiff to receive the vegetarian diet instead. (Wegman Decl. ¶ 5.)

On November 18, 2008, Defendant Wegman was sent an email regarding the House of Yahweh ("HOY"). The subject of the email was "Religious hate group: House of Yahweh." The email referred to the HOY as a cult and stated it posed "an extreme danger to its members." (Wegman Decl. ¶ 6.) Defendant Wegman forwarded the email to administrative staff at KVSP but did not comment on its contents. (Wegman Decl. ¶ 6.) Wegman had no evidence that HOY inmates were conducting illegal activities under the guise of a religious service, but she thought it would be prudent to alert custody staff and prison chaplains of the potential that this was occurring. (Wegman Decl. ¶ 6.)

Inmates wishing to celebrate a religious holiday can submit a Religious Event Package, which explains the holiday they request to commemorate and lists the accommodations that are needed. (Wegman Decl. ¶ 7.) In 2010, members of the HOY requested to celebrate the Yahweh Passover Feast and requested an eight-day modified meal plan. (Wegman Decl. ¶ 7.) The HOY inmates were granted one special meal to celebrate the Yahweh Passover Feast. (Wegman Decl. ¶ 8.) The request for the eight-day modified meal plan was denied pursuant to Department Operations Manual ("DOM") section 54080.13, which states: "Inmate religious groups shall not be permitted more than two events each year where foods with recognized significance are provided by the institution in place of the regularly planned meal." (Wegman Decl. ¶ 8.) The observance of Passover constitutes a single religious holiday, however, under DOM section 54080.14, the rules for Passover only apply to Jewish inmates desiring to practice Jewish Kosher

---

[5] Plaintiff claims his Kosher diet was approved and his diet card signed by Jewish Chaplain D. Mehlman, not Defendant Wegman. However, Defendants have submitted evidence that the Kosher diet was approved by Defendant Wegman. According to his declaration, Chaplain Mehlman does not approve Jewish Kosher Diet Programs for self-identifying members of the House of Yahweh. (Mehlman Decl. ¶ 4.) In addition, Mehlman has no recollection of meeting with, or approving a Kosher Diet Program for Plaintiff. (Mehlman Decl. ¶ 3.) In addition, Plaintiff's diet card bears the signature of Defendant Wegman, not Chaplain Mehlman. (TAC, Ex. B.)

law. (Wegman Decl. ¶ 8.) CDCR regulations do not authorize Passover observance for non-Jewish inmates. (Wegman Decl. ¶ 8.)

On April 5, 2010, Plaintiff filed appeal log no. KVSP-0-10-1492, in which Plaintiff alleged that Defendant Wegman prevented him from fully observing the HOY Passover in 2010. (Castro Decl. ¶ 5.) On June 22, 2010, the appeal was denied. On or about June 22, 2010, Defendant Wegman wrote to Plaintiff regarding his requests. In the letter, Wegman advised Plaintiff that pursuant to Cal. Code Regs. § 3054.2(a), he did not meet the criteria for receiving a Kosher diet, and as per the regulations, the diet is explicitly for Jewish inmates desiring to practice Jewish Kosher law, and such decision must be made by a Jewish rabbi. (Wegman Decl. ¶ 9.) Defendant Wegman advised Plaintiff that he qualified for the vegetarian meal plan and so authorized him to receive the vegetarian diet. (Wegman Decl. ¶ 9.) Defendant Castro co-signed the First Level Response because Defendant Wegman's decision was properly based on CDCR policy; however, he did not have any personal involvement in investigating or reviewing the appeal. (Castro Decl. ¶ 6.)

All CDCR staff are obligated to follow the DOM and the Cal. Code of Regs., tit. 15. Pursuant to those regulations, Plaintiff did not meet CDCR's criteria for receiving a Kosher meal. Therefore, Defendant Wegman was not authorized to provide Plaintiff with a Kosher diet card.[6] (Castro Decl. ¶ 7.)

On April 18, 2010, Plaintiff filed appeal log no. KVSP-10-01432 alleging that staff deviated from the event package for the HOY members observing Passover, which ran from March 30, 2010, until April 6, 2010. Plaintiff alleged that the event package was changed to one day with one meal and that the meal was not religiously permissible to consume. Porter was interviewed by Correctional Business Manager P. Gonzales, and the appeal was denied because Plaintiff was found to have been given a reasonable accommodation for his event. (Castro Decl. ¶ 8.) At the Second Level of Review, Correctional Counselor B. DaVeiga partially granted the appeal in that Plaintiff was permitted to observe his religious events in accordance with the Cal.

---

[6] Plaintiff attempts to dispute this fact in asserting that Jewish Chaplain Mehlman approved and issued Plaintiff a Kosher diet card. As noted above, however, Defendants have submitted evidence refuting Plaintiff's allegation. Plaintiff submits no evidence in support of his allegation.

9

1  Code of Regs.  (Castro Decl. ¶ 9.)  Plaintiff was advised that he did not qualify for a Kosher diet
2  pursuant to CDCR policies, but he did qualify for the CDCR vegetarian or meat alternative diet
3  options.  (Castro Decl. ¶ 9.)  Acting Chief Deputy Warden D. G. Adams was not available to sign
4  the Second Level Response, and therefore Defendant Castro co-signed the response on his behalf.
5  (Castro Decl. ¶ 10.)

6  On April 18, 2010, Plaintiff filed appeal log no. KVSP-0-10-00851.  According to the
7  appeal, Plaintiff alleged that Defendant Wegman refused Plaintiff's request for a religious diet
8  during the HOY Passover event in 2010.  Plaintiff alleged that Wegman showed contempt for his
9  beliefs and that her actions caused him to starve.  Plaintiff requested that KVSP admit his rights
10 were violated and that he be compensated for the days he was not fed the agreed upon meal.
11 Defendant Biter determined that the appeal should be processed as a staff complaint and assigned
12 it to Defendant Castro to investigate.  (Castro Decl. ¶ 11; Biter Decl. ¶ 8.)

13 On May 13, 2010, Defendant Castro reviewed Plaintiff's appeal and central file. As part of
14 the investigation, Defendant Castro interviewed Plaintiff and Defendant Wegman.  Defendant
15 Castro determined that Wegman did not violate CDCR policy, that she acted in accordance with
16 CDCR policies, and that she did not deny Plaintiff's request out of any animosity toward Plaintiff
17 or his religious beliefs. (Castro Decl. ¶ 13.)  The appeal was granted in part insofar as the appeal
18 inquiry had been conducted.  The appeal was otherwise denied.  (Castro Decl. ¶ 12.)

19 Defendant Biter has not personally investigated any of Plaintiff's administrative appeals
20 with respect to requests for a Kosher diet or special accommodations for Passover.  (Biter Decl. ¶
21 6.)

22 On February 15, 2011, Plaintiff's appeal regarding Passover accommodations and Kosher
23 food was denied at the Department Level of Review for the same reasons stated in Defendant
24 Wegman's letter, to wit, that Plaintiff is not Jewish and therefore does not qualify for Passover or
25 a Kosher diet under CDCR policies.  (Wegman Decl. ¶ 10.)

26 Plaintiff exhausted an appeal at the Third Level of Review relating to the HOY Passover in
27 2010; however, there is no record of Plaintiff having exhausted an appeal at the Third Level
28 concerning the HOY Passover in 2009 or 2011. (Briggs Decl. ¶ 9.)  Thus, Plaintiff's allegations

10

concerning the 2009 and 2011 HOY Passover events are unexhausted.

## V. Discussion

### A. Personal Participation

Under section 1983, Plaintiff must link the named defendants to the participation in the violation at issue. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed under a theory of *respondeat superior*, and some causal connection between the conduct of each named defendant and the violation at issue must exist. Iqbal, 556 U.S. at 676-77; Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).

To hold a defendant liable for damages, the wrongdoer must personally cause the violation. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. Id. Sweeping conclusory allegations against an official are insufficient to state a claim for relief. Id. at 634 (citation omitted).

Plaintiff concedes that Defendant Biter is entitled to judgment as a matter of law, because it is undisputed that Defendant Biter did not personally participate in the alleged violations at issue.

Defendants also argue that Defendant Castro is entitled to summary judgment because Defendant Castro did not personally participate in the alleged denial of Plaintiff's 2010 Passover accommodations. Plaintiff alleges he placed Defendant Castro on notice by virtue of his two appeals to Defendant on April 5, 2010, and April 18, 2010. According to the exhibits, however, the April 5, 2010, appeal was to the informal level of appeal and responded to by Defendant Wegman. (Castro Decl., Ex. A.) That appeal was not directed to Defendant Castro until June 8, 2010, when Plaintiff appealed to the formal level of review. Therefore, Defendant Castro was not

11

put on notice by the April 5, 2010, appeal until June 8, 2010.  As Defendants correctly argue, the Passover event had already concluded at this point.  Thus, insofar as the alleged violation had already concluded by the time Plaintiff allegedly notified Defendant Castro, Defendant Castro could not have prevented the violation, nor can he be found to have contributed to it.  See Hutchison v. Grant, 796 F.2d 288, 291 (9th Cir. 1986).

In his opposition, Plaintiff alleges that Defendant Castro participated in the alleged violation by signing and approving the Passover accommodations.  Defendants argue that Castro was one of 11 administrators who approved the special events for Passover, however, the memoranda he signed were prepared for signature by Defendant Wegman.  They were not requests submitted directly by inmates explaining what they were requesting and the reasons why. There was nothing in the documents to signal to Defendant Castro that Plaintiff's rights were being violated.  Defendant Castro's participation was limited to determining whether staff responses were consistent with CDCR policy.  The Court finds that Defendants are correct that Plaintiff has failed to create a genuine dispute of material fact as to Defendant Castro's participation.  Accordingly, Defendant Castro is entitled to judgment as a matter of law.

**B.     Qualified Immunity**

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).  "[T]he qualified immunity inquiry is separate from the constitutional inquiry" and "has a further dimension."  Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 205 (2001)) (internal quotation marks omitted).  "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made. . . ."  Estate of Ford, 301 F.3d at 1049 (citing Saucier, at 205) (internal quotation marks

12

omitted).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier, 533 U.S. at 201; Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

Under California Code of Regulations, title 15, section 3054.02, the Kosher diet is reserved only for Jewish inmates who have been determined to be Jewish by a Jewish rabbi. Plaintiff is admittedly not Jewish and is therefore not entitled to the Kosher diet plan under Department Operations Manual ("DOM") section 54080.13, and Cal. Code of Regs., tit. 15, sections 3053, 3054, 3084, and 3210. In addition, inmates are entitled to receive one special religious meal on no more than two occasions per year. DOM section 54080.13. Further, under DOM 54080.14, rules for Passover only apply to Jewish inmates desiring to practice Jewish Kosher law; non-Jewish inmates are not authorized to observe Passover under CDCR policies.

Plaintiff sought a Kosher meal plan for eight days of Passover. Plaintiff also alleges Defendant Wegman denied him a Kosher meal plan in 2009 and 2011. Defendant Wegman denied Plaintiff a Kosher diet for the eight days requested in 2009, 2010, and 2011, but Plaintiff was offered an alternative special diet on one day instead. Generally, government employees are entitled to rely on the assumption that a duly enacted statute, ordinance or regulation complies with constitutional standards. Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994). If a government employee acts in reliance on a regulation that a reasonable employee could believe is constitutional, the employee will be immune from liability even if the statute is later held to be unconstitutional. Id. Accordingly, Defendant Wegman is entitled to rely on Department Operations Manual section 54080.13, and Cal. Code of Regs., tit. 15, sections 3053, 3054, 3084, and 3210 as meeting constitutional standards. Under these regulations, a reasonable

official would have believed it was lawful to deny Kosher meals and the observance of Passover to a non-Jewish inmate. Pearson, 555 U.S. at 236. Therefore she is entitled to qualified immunity.

Similarly, Defendant Castro reviewed Defendant Wegman's response to Plaintiff's appeal and determined the response was consistent with CDCR policies and regulations. He too is entitled to rely on the above regulations as constitutional and is entitled to qualified immunity.

### C. RLUIPA

A RLUIPA claim may proceed only for injunctive relief against defendants acting within their official capacities. See Wood v. Yordy, 753 F.3d 899, 904 (9th Cir.2014) (RLUIPA does not contemplate liability of government employees in individual capacity); see also Holley v. Cal. Dep't of Corr., 599 F.3d 1108, 1114 (9th Cir. 2010) ("The Eleventh Amendment bars [the plaintiff's] suit for official-capacity damages under RLUIPA.").

Therefore, Plaintiff is only entitled to injunctive relief under RLUIPA. Because injunctive relief is the sole form of relief available under RLUIPA, Plaintiff's subsequent receipt of the Kosher diet in October of 2014 moots his request for injunctive relief. Injunctive relief becomes moot when a party receives the requested relief after filing an action. See Johnson v. Moore, 948 F.2d 517, 519 (9th Cir.1991) (per curiam). Here, it is undisputed that Plaintiff has been receiving a Kosher diet since October of 2014.

The Court therefore recommends that summary judgment be granted on the RLUIPA claim.

### D. Exhaustion

Defendants contends that Plaintiff has failed to exhaust his administrative remedies with respect to any claims concerning alleged violations in 2009 and 2011.

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by

the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. This requires the plaintiff to "show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)). "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Albino, 747 F.3d at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

Here, the parties do not dispute that Plaintiff failed to present his 2009 and 2011 claims to the Director's Level of Review. Plaintiff argues however that the administrative remedy was effectively unavailable to him. Concerning the Passover event in 2009, Plaintiff alleges that he attempted to submit an appeal at the informal level to Defendant Wegman, but Defendant Wegman wrongly forwarded the appeal to the Formal Level without responding to Plaintiff. The appeal was rejected at the Formal Level because Plaintiff had not yet resolved the appeal at the

15

Informal Level. Plaintiff made multiple more attempts but they were rejected by the appeals office for various inconsistent and inapplicable regulations. In support, Plaintiff notes the various date stamps on the appeal forms showing acceptance and rejection by the appeals office. Defendants did not reply to Plaintiff's allegations.

As to the event in 2011, Plaintiff submitted an appeal to the Appeals Coordinator. However, the appeal was rejected stating Plaintiff had exceeded the number of appeals allowable in a fourteen day period. Plaintiff then resubmitted the appeal. Again the appeal was returned with another screen-out sheet instructing Plaintiff to attach documents. Subsequently, Plaintiff's appeal was canceled for exceeding time limits. Plaintiff alleges the cancellation was improper in that he submitted his appeal well within time limits. In addition, Plaintiff did not receive notice of the cancellation for five months since he had been re-housed in multiple facilities and cells, and it took five months for his paperwork to catch up with him. Plaintiff made several more attempts to appeal, but the appeals were all canceled or rejected. Defendants did not reply to Plaintiff's allegations.

Plaintiff has demonstrated a genuine dispute of material fact as to exhaustion of his 2009 and 2011 administrative remedies. Therefore, Defendant is not entitled to summary judgment on the basis of exhaustion.

### E.  Deliberate Indifference

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains

16

while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Here, Plaintiff claims that he fell in the shower and hit his head. He was then taken to the medical clinic where he was treated by Defendant Grewal. Plaintiff states Defendant Grewal asked him how he felt, checked his blood pressure, and kept him in the clinic until he regained his strength. Plaintiff complains that Defendant did not check his head or neck, or record his physical appearance, hydration, weight or blood sugar. Plaintiff's complaints amount to a mere difference of opinion regarding medical treatment, which does not give rise to a claim under section 1983. Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122-23; Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Rather, Plaintiff must show that the course of treatment chosen was medically unacceptable under the circumstances and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (quotation marks omitted); accord Snow, 681 F.3d at 987-88. Here, Plaintiff makes no showing that Defendant Grewal's actions in engaging and observing Plaintiff while monitoring his blood

pressure was medically unacceptable under the circumstances. As a lay witness, Plaintiff is not qualified to render an opinion that Defendant should have examined Plaintiff further, and that Defendant's failure to do so was in contravention of acceptable medical standards. Fed. R. Evid. 701, 702. Moreover, Plaintiff's allegations amount to negligence at most, which falls short of a constitutional violation. Snow, 681 F.3d at 985.

Accordingly, there is no dispute as to any material fact and Defendants are entitled to summary judgment.

## VI. Conclusion and Recommendation

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendant's motion for summary judgment be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections must be filed within **ten (10) days** from the date of service of the objections. Local Rule 304(d). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 14, 2015**                              /s/ *Dennis L. Beck*
                                                  UNITED STATES MAGISTRATE JUDGE