1

2

3

4

5

6

7

8    **UNITED STATES DISTRICT COURT**

9    EASTERN DISTRICT OF CALIFORNIA

10

11   BRIAN ELLIS PORTER,                    Case No.  1:10-cv-01500-BAM (PC)

12              Plaintiff,                   **PRETRIAL ORDER**

13        v.                                 Defendant's Motions in Limine Filing
                                             Deadline: **July 14, 2017**
14   CHERYLEE WEGMAN,
                                             Plaintiff's Motions in Limine Filing Deadline:
15              Defendant.                   **July 17, 2017**

16                                           Oppositions to Motions in Limine Filing
                                             Deadline: **July 28, 2017**
17
                                             Telephonic Status Conference: **July 27, 2017**, at
18                                           10:00 a.m. in Courtroom 8 (BAM)

19                                           Motion in Limine Hearing: **August 14, 2017**, at
                                             10:00 a.m. in Courtroom 8 (BAM)
20
                                             Jury Trial: **August 29, 2017**, at 8:30 a.m. in
21                                           Courtroom 8 (BAM)

22

23        Plaintiff Brian Ellis Porter ("Plaintiff") is a state prisoner proceeding pro se and in forma

24   pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  All parties have consented to

25   magistrate judge jurisdiction.  (ECF Nos. 5, 150.)  This action proceeds on Plaintiff's claims

26   against Defendant Wegman for violation of the Free Exercise Clause of the First Amendment.  In

27   particular, this action proceeds on Plaintiff's claim that Defendant Wegman violated his right to

28   free exercise of his religion by switching him from a kosher diet to a vegetarian diet and denying

                                             1

his requested dietary accommodations during multi-day Passover observances.

The parties submitted pretrial statements, and on July 11, 2017, the Court held a telephonic trial confirmation hearing. Plaintiff, appearing pro se, and Aseil Mohmoud and Monica Anderson, counsel for Defendant, attended the hearing. Having reviewed the parties' statements and the remainder of the file, and having considered the issues raised at the telephonic trial confirmation hearing, the Court issues the instant pretrial order.

## I. **Jurisdiction and Venue**

The Court has subject matter jurisdiction over this federal civil rights action. 28 U.S.C. § 1331. Venue is proper because the conduct allegedly occurred in this judicial district. 28 U.S.C. § 1391.

## II. **Trial**

The parties demand a trial by jury. Fed. R. Civ. P. 38(b).

Trial is set for **August 29, 2017, at 8:30 a.m.** before U.S. Magistrate Judge Barbara A. McAuliffe in Courtroom 8 (BAM). The parties anticipate the trial will last approximately two (2) to three (3) days.

## III. **Facts**

### A. **Plaintiff's Undisputed Facts**

Plaintiff contends the following facts are undisputed:

1. Plaintiff Brian Ellis Porter is a California state prisoner housed at Kern Valley State Prison ("KVSP") in Delano, California, where the events giving rise to this action occurred. Plaintiff is proceeding against Defendant Cherylee Wegman, the Community Partnership/Resource Manager at KVSP.

2. Plaintiff is a member of the religion called the House of Yahweh ("HOY") and the tenets of the HOY religion require its members to maintain a Kosher diet and observe Passover Feast of Unleavened Bread ("Passover"). Passover lasts approximately eight calendar days where HOY members are required to destroy all leavened food in their possession just prior to the beginning of Passover, and refrain from eating leavened food or coming into contact with leavened food. During Passover, HOY members must eat some amount of unleavened bread each day of the

event, and eat some portion of the Passover sacrifice the night beginning the religious event which is Passover night.

3.     Defendant Wegman is the Community Partnership Manager at KVSP.  Defendant Wegman's responsibilities include planning, organizing, and directing community based programs for inmates related to religion, art, services to communities, self-help groups, and volunteers.  At all times relevant hereto, Defendant Wegman was not a chaplain for CDCR.

4.     In 2008, Plaintiff applied to receive a Kosher diet by submitting a CDC 3030 Religious Diet Request form to the appropriate staff, requesting only a Kosher diet.  Plaintiff's request was approved soon thereafter, however, Plaintiff never received Kosher meals.

5.     On November 21, 2008, Defendant Wegman circulated an email amongst KVSP staff that referred to the HOY as a "Religious hate group," a "cult" and saying that the HOY poses a "real danger."

6.     Inmates wishing to celebrate a religious event can submit a Religious Event Package, which explains the event they request to commemorate and list the accommodations that are needed.

7.     In 2009, Plaintiff and HOY members at KVSP submitted a Religious Event Package specifically to receive an eight-day modified meal plan for the observance of Passover, taking place from April 10, 2009 to April 17, 2009.  Defendant Wegman circulated a memorandum dated April 17, 2009, suggesting to all KVSP staff that the two HOY elders/ministers be cell fed rather than participating in the Passover banquet with all the HOY members.  Plaintiff and HOY members were granted one special meal to celebrate the HOY Passover on April 17, 2009.

8.     In 2010, Plaintiff and HOY members at KVSP submitted a Religious Event Package, specifically to receive an eight-day modified meal plan for the observance of Passover, taking place from March 30, 2010, to April 6, 2010.  Plaintiff and HOY members were granted one special meal to celebrate the HOY Passover on March 30, 2010.

9.     In 2011, Plaintiff submitted a Religious Event Package, specifically to receive an eight-day modified meal plan for the observance of Passover, taking place from April 18, 2011, to April 25, 2011.  Plaintiff was denied his request in whole.

3

10.     On April 30, 2009, Plaintiff attempted to file an institutional grievance, complaining about the prison's failure to provide Plaintiff with a Kosher diet as well as their failure to provide the necessary accommodations for the observance of Passover.  However, Defendant Wegman obstructed the institutional grievance process, leaving Plaintiff with no means to exhaust his administrative remedies.

11.     On April 18, 2010, Plaintiff filed an institutional grievance, appeal log no. KVSP-0-10-00851 directly against Defendant Wegman complaining about her failure to grant Plaintiff's request for necessary accommodations for the observance of Passover, and limiting the accommodations to one meal void of any religious significance.  Plaintiff exhausted his appeal through all available levels.

12.     On May 15, 2011, Plaintiff attempted to file an institutional grievance complaining about the prison's failure to provide Plaintiff with any accommodations for the observance of Passover despite his timely request thereto.  KVSP obstructed the institutional grievance process, leaving Plaintiff with no means to exhaust his administrative remedies.

### B.     Defendant's Undisputed Facts

Defendant contends the following facts are undisputed:

1.     Plaintiff Porter was in CDCR custody and housed at Kern Valley State Prison (KVSP).

2.     At all times relevant to this case, Defendant C. Wegman was employed by CDCR as the Community Resource Manager at KVSP and remains in that capacity.

3.     Plaintiff identifies as a member of the "House of Yahweh" faith.

4.     Plaintiff requested a religious diet meal at KVSP as an alternative to the standard inmate meal.

5.     Per CDCR regulations, Plaintiff qualified for vegetarian diet meal and was provided vegetarian meals to accommodate his religious needs.

6.     Plaintiff refused to eat the vegetarian meals for a period of four-to-five days during Passover in 2009 and 2010 because he wanted a kosher diet meal.

7.     CDCR's religious diet policy only allowed for Jewish inmates to be provided a kosher diet meal.

8.     The "House of Yahweh" is not Judaism, nor is it a branch of Judaism.

9.     Because Plaintiff was not Jewish, he could not be granted a kosher diet meal. Instead, he was provided vegetarian meals.

10.     Vegetables are "kosher."

11.     Plaintiff chose not to eat the vegetarian meals at all for a period of four-to-five days during Passover in 2009 and 2010.

12.     Plaintiff took part in a special event meal that the institution provided for the House of Yahweh inmates' Feast of Tabernacles, yet Plaintiff refused to eat the food because he claimed the food was unsatisfactory.

### C.     Plaintiff's Disputed Factual Issues

1.     Defendant Wegman claims that in or about 2008, Defendant Wegman mistakenly approved inmate Porter's request for a Kosher diet.

   a.     Plaintiff disputes this claim, alleging himself that in 2008, Plaintiff applied to receive a Kosher diet by completing a CDC Form 3030, Religious Diet Request, then submitting it to the Jewish chaplain, Daniel Mehlman, who later interviewed Plaintiff and subsequently approved his request.

2.     Defendant Wegman claims that in 2010, members of the HOY requested to celebrate the Yahweh Passover feast, as well as an eight-day modified meal plan.  The HOY members were provided with one special meal.  However, they were denied the requested eight-days of special meals pursuant to Department Operations Manual ("DOM") section 54080.13, which states: "Inmate religious groups shall not be permitted more than two events each year where foods with recognized religious significance are provided by the institution in place of the regularly planned meal."  Although the observance of Passover constitutes a single religious holiday, pursuant to DOM section 54080.14, the rules for Passover only apply to Jewish inmates desiring to practice Jewish Kosher law.  CDCR policy does not authorize Passover observance for non-Jewish inmates.

   a.     Plaintiff disputes these claims, alleging that despite the fact that Passover is a week-long (approximately eight-days) religious observance requiring a specified meal plan,

5

Defendant Wegman decided on her own to modify the observance of Passover to a one day, one meal event for HOY members through her own misinterpretation of CDCR policy, to disparage against HOY.

b. Further, there is no CDCR policy that dictates that the week-long (approximately eight-day) observance of Passover is reserved exclusively for Jewish inmates and CDCR will only provide accommodations for proper observance of Passover to Jewish inmates despite an inmate's sincerely held belief that he/she must observe Passover the same way a Jewish inmate does. California Code of Regulations, Title 15 ("15 CCR") section 3054.2(e) and DOM section 54080.14 simply defines the basic rules for Passover observance due to the Jewish Kosher Diet Program's ("JKDP") inherent accommodations for participants in the program (providing specified accommodations particular to proper Passover observance). However, these policies surrounding Passover (nor any other CDCR policy) in no way determines how HOY observes Passover, or what accommodations HOY can be provided, including a multi-day modified meal plan particular to proper observance of Passover for inmates outside of the JKDP desiring to observe Passover. To interpret these policies in such a way is discriminatory on its face.

3. Defendant Wegman claims that although Porter requested a Kosher diet and Passover accommodations, pursuant to DOM sec 54080.13 and 15 CCR secs. 3053, 3054, 3084, and 3210, Defendant Wegman did not have the authority or ability to provide him with accommodations that he did not meet the criteria for under those regulations.

a. Plaintiff disputes this claim, alleging himself that Plaintiff did meet the criteria for both religious accommodations for Passover as well as a Kosher diet. Defendant Wegman used her own discretion, absent of CDCR policy to limit the observance of Passover for Plaintiff to a one day, one meal event void of any religious significance, and revoke Plaintiff's Kosher diet (JKDP) approval. Defendant Wegman is not a chaplain and has never had the authority to determine inmate's request, including Plaintiff's request for a religious diet or requests for religious event accommodations and she violated CDCR policy by doing so. No CDCR policy restricts a chaplain's ability and/or authority to provide Plaintiff with accommodations for each day of Passover.

4.     Defendant Wegman claims that she never denied Porter Kosher meals or accommodations for Passover because of animosity or ill feelings for him or his religion, rather, she denied his request for a Kosher diet and Passover accommodations because she was not authorized to provide him with the accommodations under CDCR policy, which she is bound to adhere to.

a.     Plaintiff disputes this claim, alleging himself that Defendant Wegman did hold contempt towards the HOY which she clearly expressed through a pattern of disparate and disparaging actions, including: 1) the circulation of an email amongst KVSP staff, describing the HOY as a "religious hate group," a dangerous group and a potentially dangerous cult, and also Defendant Wegman's prejudice reason for circulating this email; 2) Defendant Wegman's subversion of the Religious Diet Program policies by acting in place of the chaplain for the purpose of determining Plaintiff's eligibility in his request for a Kosher diet, and determining Plaintiff's religious needs for Passover, denying Plaintiff any accommodations that held religious significance; 3) suggesting to KVSP staff that the HOY ministers/elders at KVSP be cell fed during the Passover banquet of 2009, rather than participating in the banquet along with all the other HOY members; 4) denying Plaintiff and all other HOY members their requested religious accommodations for Passover on a discriminatory basis; 5) misinterpreting CDCR policy to discriminate specifically against HOY; and 6) manipulation of the CDCR inmate appeal process to avoid responding to Plaintiff's appeals concerning Passover, and undermine his attempts to resolve his issues at the administrative level.

D.     **Defendant's Disputed Factual Issues**

1.     Whether Plaintiff, an inmate identifying as a member of the House of Yahweh faith, was entitled to the institutional kosher diet meal from 2008–2011 at KVSP.

2.     Whether Officer Wegman, as the Community Resource Manager at KVSP, violated CDCR policy by not providing Plaintiff with a kosher diet meal once per day during Passover in 2009–2010.

3.     Whether Plaintiff was entitled to a "special event" meal during Passover in 2009–2010 that was "kosher" per his standards.

///

7

**E.  Disputed Evidentiary Issues**[1]

**1.  Plaintiff's Disputed Evidentiary Issues**

Plaintiff has identified no disputed evidentiary issues.

**2.  Defendant's Disputed Evidentiary Issues**

a) Defendant objects to any evidence submitted by Plaintiff based upon or containing inadmissible hearsay, or evidence that is irrelevant, immaterial, or incompetent.

b) Defendant will contest the admissibility of any written statements by inmates whom Plaintiff claims are witnesses including, but not limited to, any statement signed by said inmates.

c) Defendant objects to any opinion testimony from Plaintiff or any non-expert witnesses regarding any matters that call for medical expertise, including the cause of injuries, if any.

d) Defendant reserves objections to specific testimony and exhibits until such time as Defendant has had the opportunity to hear such testimony and examine such exhibits. Defendant will also file specific objections to Plaintiff's exhibits once they have been exchanged with Defendant.

e) Should Plaintiff or any other incarcerated witnesses testify, Defendant will seek to impeach such witnesses by presenting evidence of prior felony convictions, pursuant to Federal Rules of Evidence, Rule 609. The verdict in this case will be affected by the credibility of witnesses. Therefore, Defendant argues that no one who has suffered a prior felony conviction is entitled to the false aura of veracity which would occur if impeachment were not allowed.

**F.  Special Factual Information**

Not applicable.

## IV.  Relief Sought

Plaintiff seeks a declaratory judgment, compensatory damages, punitive damages, litigation fees and costs, and a permanent injunction.

Defendant seeks a judgment in her favor with Plaintiff taking nothing, and an award of attorney fees and costs.

///

---

[1] The parties may file motions in limine, addressed below, and/or object to the introduction of evidence at trial.

# V.    Points of Law

## A.    Imposition of Liability Under Section 1983

Under § 1983, Plaintiff is required to prove that Defendant (1) acted under color of state law and (2) deprived him of rights secured by the First Amendment of the United States Constitution. Long v. Cty. of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006). Plaintiff must prove that Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor is liable under § 1983 for a subordinate's constitutional violations 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" Maxwell v. Cty. of San Diego, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

There is no respondeat superior liability under section 1983, and Defendant is only liable for her own misconduct.  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

## B.    First Amendment – Free Exercise

A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of their religion. Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987), aff'd sub nom. Hernandez v. C.I.R., 490 U.S. 680, 699 (1989). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Ohno v. Yasuma, 723 F.3d 981, 1101 (9th Cir. 2013) (quoting Guru Nanak Sikh Soc'y of Yuba City v. Cty. of Sutter, 456 F.3d 978, 998 (9th Cir. 2006) (internal quotation marks and alterations omitted)).

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations omitted); see also O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Shakur v. Schriro, 514 F.3d 878, 883–84 (9th Cir. 2008). In order to implicate the Free Exercise Clause, the prisoner's belief must be both sincerely held and rooted in religious belief. Shakur, 514 F.3d at 885 (citations omitted). The

challenged conduct "is valid if it is reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89, (1987).

### C.    Qualified Immunity

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731 (2011) (citations omitted).

To determine if an official is entitled to qualified immunity the court uses a two part inquiry. <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001), overruled in part by <u>Pearson</u>, 555 U.S. at 236. The court determines if the facts as alleged state a violation of a constitutional right and if the right was clearly established at the time of the challenged conduct. <u>Ashcroft</u>, 563 U.S. at 735. This does not require that the same factual situation must have been decided, but that existing precedent would establish the statutory or constitutional question beyond debate. <u>Id.</u> at 741; <u>Mattos v. Agarano</u>, 661 F.3d 433, 442 (9th Cir. 2011). The inquiry as to whether the right was clearly established is "solely a question of law for the judge." <u>Dunn v. Castro</u>, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting <u>Tortu v. Las Vegas Metro. Police Dep't</u>, 556 F.3d 1075, 1085 (9th Cir. 2009)). District courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson</u>, 555 U.S. at 236.

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002) (citation omitted). Official action is entitled to protection "unless the very action in question has previously been held unlawful." <u>Id.</u> "Specificity only requires that the unlawfulness be apparent under preexisting law," <u>Clement v. Gomez</u>, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," <u>Hope</u>, 536 U.S. at 741.

The salient question is whether the state of the law at the time gave defendants fair warning that their alleged treatment of plaintiff was unconstitutional. Id.

### D. Punitive Damages

Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence. NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2008). The jury must find that Defendant's conduct was "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1986). Acts or omissions which are malicious, wanton, or oppressive support an award of punitive damages. Dang v. Cross, 422 F.3d 800, 807–08 (9th Cir. 2005).

### E. Federal Rules of Evidence

Federal Rule of Evidence 609 provides that evidence of a witness's prior felony conviction may be used to impeach that witness's testimony. Fed. R. Evid. 609.

Federal Rule of Evidence 404(b) provides that evidence of prior crimes, wrongs, or acts cannot be used to prove the character of the person in order to show conduct in conformity with that character trait. Fed. R. Evid. 404(b). Such prior acts may be admissible for other purposes only, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id.

## VI. Abandoned Issues

Plaintiff abandoned all claims against former Defendants Biter, Castro, and Grewal. Plaintiff also abandoned his Eighth Amendment claim; 42 U.S.C. §§ 2000cc et seq. claim; 42 U.S.C. § 2000d claim; and 42 U.S.C. § 3789d(c)(1) claim.

## VII. Witnesses

**The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).**

///

### A. Plaintiff's Witness List[2]

1. Brian Ellis Porter, Plaintiff
2. Rabbi Paul Shleffar, Jewish Chaplain of CDCR
3. Denice Porter
4. Ellis Porter
5. Lisa Turner
6. Francisco Diaz, Catholic Chaplain, KVSP
7. Maurice Howard, Muslim Chaplain, KVSP

### B. Defendant's Witness List[3]

1. C. Wegman, Defendant
2. Custodian of Records for Plaintiff's Prison Central File
3. Custodian of Records for Plaintiff's Prison Medical File
4. D. Skaggs, Community Resource Manager (expert witness)
5. E. Krants, Chaplain at KVSP (expert witness)
6. Rabbi D. Mehlman, Jewish Chaplain at KVSP (expert witness)

## VIII. Exhibits

**The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).**

### A. Plaintiff's Exhibits

1. HOY letter, dated August 7, 2002

---

[2] Plaintiff is not required to call all of the witnesses listed. However, witnesses the parties plan to call must be available on August 29, 2017, by 9:30 a.m., unless otherwise ordered by the Court. The Court will not delay the proceedings because of witness unavailability. Also, although Plaintiff has not named the Defendant as a witness, he may call Defendant as a witness in his case-in-chief. The Court will address Plaintiff's motion for incarcerated and unincarcerated witnesses by separate order. (ECF No. 157.)

[3] Defendant is not required to call all of the witnesses listed. However, as is the Court's general practice in cases such as this, witnesses the defense plans to call shall be present on August 29, 2017, by 9:30 a.m. and shall be available for Plaintiff to call for direct examination.

2. KVSP Kosher Diet Card (2008)

3. Vegetarian Diet Card

4. Vegetarian Diet Chrono

5. Kosher Diet Card (2015)

6. Kosher Diet Chrono

7. Kosher Diet Request Form (approved by Shleffar)

8. Religious Diet Request Form CDC 3030

9. 2009 KVSP Passover Menu

10. Fellowship Banquet Memorandum, dated February 10, 2009

11. HOY Passover Memorandum, dated April 7, 2009

12. Email from Defendant Wegman

13. Religious Event Packages (2009–2016)

14. Denice Porter's Letter to Defendant Wegman, dated April 12, 2011

15. Letter to Chaplain Diaz, dated March 3, 2009

16. Allen Williams' Letter to Chaplain Diaz, dated February 27, 2009

17. Yahweh's 613 Laws (excerpts – A House of Yahweh Production)

18. The Blood and Body of Messiah – A House of Yahweh Production (excerpts)

19. Yahweh's Passover and Yahshua's Memorial – A House of Yahweh Production (excerpts)

20. Letter to CDCR Community Resource Manager, Barry Smith

21. Response from Barry Smith

22. 2009 Appeal and Response from Defendant Wegman (unexhausted)

23. 2010 Appeal Log No. KVSP-0-10-00851

24. 2010 Appeal Log No. KVSP-0-10-01432

25. 2011 Appeal (unexhausted)

26. 2011 Denial of Passover Accommodations

27. Memorandum to HOY Member

28. George Hamilton's Appeal, Log No. SATF-02-04501

29. George Hamilton's Civil Rights Complaint Response

30.  Complaint from Allen B. Williams

31.  Appeal Log No. KVSP-14-02674

32.  California Code of Regulations, Title 15, 2008–2016

33.  Notice of Change to Text, dated August 11, 2009

34.  DOM excerpts

35.  OP excerpts

36.  Robinson v. Delgado case

37.  Allen v. Virga case

38.  In re Keith Allen Lewis case

39.  Declaration of Denice Porter

40.  Declaration of Lisa Turner

41.  Declaration of Jimmy Serna

42.  Ramadan Religious Event Memorandum

43.  KVSP Ramadan Menu

44.  Ramadan Menu

45.  Community Partnership/Resource Manager Job Duties

46.  KVSP Staff Log Book Entry

47.  2010 HOY Member HOY Passover Memorandum

48.  2010 KVSP Passover Memorandum

49.  Plaintiff's Trust Account Records

50.  Health Yahweh's Way, A House of Yahweh Production

**B.      Defendant's Exhibits**

1.  Relevant portions of Plaintiff's canteen records.

2.  Letter from House of Yahweh Inmate Representative, A. Quiroz, dated October 20, 2011.

3.  CDCR Religious Event Request Packets submitted by House of Yahweh inmates at KVSP for Feast of Tabernacles, dated April 17, 2009, April 19, 2011, October 20, 2011, October 12, 2011, including the corresponding referral memorandum route slips from the institution.

///

14

4.	All CDCR Religious Event Request Packets submitted by Plaintiff for Feast of Tabernacles, including the packet dated April 17, 2009.

5.	CDCR Records from 2009 and 2010 documenting inmates who partook in hunger strikes during the relevant time period.

6.	CDCR Regulations and Policies in effect from 2008–2011 regarding religious diet meals.

7.	Photos of the regular meals offered to inmates.

8.	Photos of the kosher diet meals offered to inmates.

9.	Photos of the vegetarian diet meals offered to inmates.

10.	CDCR records of the cost of religious diet meals, as compared to standard meals.

11.	Plaintiff's Abstract of Judgment for his current commitment offense.

12.	Relevant case records from a similar lawsuit filed by inmate Williams and Plaintiff on similar facts, titled <u>Williams v. Wegman</u>, Case No. F12907764, dated March 7, 2009.

13.	CDCR 3030 forms for KVSP House of Yahweh inmates from the relevant time period.

14.	Plaintiff's trust account statements from the relevant time period.

15.	Letter response from Defendant Wegman to Plaintiff, dated June 22, 2010.

16.	Letter from inmate Porter dated April 2010.

17.	Memorandum from C. Wegman re the Feast of Tabernacles, dated April 17, 2010.

18.	Record of inmates who engaged in a hunger strike on October 10, 2010.

19.	March 29, 2010 food inventory for House of Yahweh Feast of Unleavened Bread Event.

20.	CDCR Religious Services Meal Schedule for the relevant time period.

21.	Letter response from Defendant Wegman to D. Porter, dated April 6, 2011.

**IX.	Discovery Documents to be Used at Trial**

Plaintiff anticipates offering the following discovery documents:

1.	Defendant C. Wegman's response to Plaintiff Brian E. Porter's Request for Admission, Set One, Admission Request/Response numbers 1–7, 9–12, and 14–15;

2.	Response to Request for Admissions from Defendant C. Wegman, Set Two, Admission Request/Response numbers 1–4, 9–10, 12, 23–24, and 26–31;

///

3.     Response to Interrogatories from Defendant C. Wegman, Set One, Interrogatories/Response numbers 1–21;

4.     Responses to Interrogatories from Defendant M. Biter, Set One, Interrogatories/Response numbers 1–2, 4–6, 9, 11, 13, 15–18, and 20–21; and

5.     Deposition of Brian Ellis Porter

Defendant anticipates offering Plaintiff's Answers to Interrogatories, Responses to Requests for Admissions, Responses to Requests for Production, deposition transcript and all supporting exhibits, or portions thereof, for purposes of impeachment or rebuttal.

The parties are warned that the Court generally does not allow the admission into evidence of discovery documents, including responses or transcripts, in their entirety.

## X.     **Further Discovery or Motions**

Defendant does not contend that further discovery should be conducted. Defendant further contends that no further discovery related Motions should be filed, other than Motions in Limine.

## XI.     **Stipulations**

None.

## XII.     **Amendments/Dismissals**

None.

## XIII.     **Settlement Negotiations**

The parties have engaged in prior settlement discussions.  Defendant does not believe any further settlement conference will be helpful.  Plaintiff states that he is willing to settle and believes settlement would be helpful, and therefore requests a court settlement conference pursuant to Local Rule 270.

As discussed on the record, the parties will advise the Court if a court settlement conference prior to trial would be beneficial to this action.

## XIV.     **Agreed Statement**

Plaintiff has not proposed an agreed statement.

Defendant has proposed the following "agreed statements," based on uncontested facts in Plaintiff's operative Complaint, Pretrial Statement, and the pleadings before the Court:

1. Plaintiff Porter was in CDCR custody and housed at Kern Valley State Prison (KVSP).

2. At all times relevant to this case, Defendant C. Wegman was employed by CDCR as the Community Resource Manager at KVSP and remains in that capacity.

3. Plaintiff identifies as a member of the "House of Yahweh" faith.

4. Plaintiff requested a religious diet meal at KVSP as an alternative to the standard inmate meal.

5. Per CDCR regulations, Plaintiff qualified for vegetarian diet meal and was provided vegetarian meals to accommodate his religious needs.

6. Plaintiff refused to eat the vegetarian meals for a period of four-to-five days during Passover in 2009 and 2010 because he wanted a kosher diet meal.

7. CDCR's religious diet policy only allowed for Jewish inmates to be provided a kosher diet meal.

8. The "House of Yahweh" is not Judaism, nor is it a branch of Judaism.

9. Because Plaintiff was not Jewish, he could not be granted a kosher diet meal. Instead, he was provided vegetarian meals.

10. Vegetables are "kosher."

11. Plaintiff chose not to eat the vegetarian meals at all for a period of four-to-five days during Passover in 2009 and 2010.

12. Plaintiff took part in a special event meal that the institution provided for the House of Yahweh inmates' Feast of Tabernacles, yet Plaintiff refused to eat the food because he claimed the food was unsatisfactory.

**XV.  Separate Trial of Issues**

Defendant requests that the issue of punitive damages be bifurcated, and at the telephonic trial confirmation hearing, Plaintiff confirmed that he does not object to such bifurcation.

As is the Court's general practice, the punitive damages phase, if any, will be bifurcated.

**XVI.  Impartial Experts – Limitation of Experts**

Plaintiff requests that this Court appoint impartial expert witnesses that may provide expert testimony to: 1) The House of Yahweh religion; 2) prisoner's religious rights; and 3)

inmate package companies and their package catalogs (namely Access Secure Pak, Union Supply, and Walkenhorst's). (ECF No. 162, pp. 12–13.)

Plaintiff claims that impartial experts are needed "for the sake of fairness," and it is clear that Plaintiff seeks experts who will corroborate his testimony and serve as advocates, rather than assist the Court. Federal Rule of Evidence 706 does not contemplate court appointment and compensation of an expert witness as an advocate for Plaintiff. Brooks v. Tate, 2013 WL 4049043, *1 (E.D. Cal. Aug. 7, 2013) (denying appointment of medical expert on behalf of state prisoner in section 1983 action); Gorrell v. Sneath, 2013 WL 3357646, * 1 (E.D. Cal. Jul. 3, 2013) (purpose of court-appointed expert is to assist the trier of fact, not to serve as an advocate for a particular party). Moreover, Rule 706 is not a means to avoid the in forma pauperis statute and its prohibition against using public funds to pay for the expenses of witnesses. Manriquez v. Huchins, 2012 WL 5880431, * 12 (E.D. Cal. 2012).

For these reasons and as stated on the record, Plaintiff's request for the appointment of impartial experts is denied.

## XVII. **Attorney's Fees**

Plaintiff intends to seek attorney's fees if he is successful in this case.

Defendant will request the award of costs after trial should Defendant prevail.

## XVIII. **Trial Exhibits**

Plaintiff intends to present several religious items as evidence during trial. These items include The Book of Yahweh; Yahweh's 613 Laws; and Yahweh's 613 Laws, Commentary, Volume One. These religious items are considered Holy to Plaintiff, where Plaintiff requests to be the only person to handle these religious items.

Special handling of Plaintiff's inmate records may be appropriate as to any confidential sections where disclosure may compromise the safety and security of the institution, staff, or other inmates, or impinge on Plaintiff's medical privacy.

The court will address special handling of exhibits at trial

## XIX. **Trial Protective Order**

In the event that Defendant is required to disclose information concerning her financial

status, Defendant will request that the Court issue a Protective Order concerning this information, under Local Rule 141.1(b)(2).

## XX. Miscellaneous

### A. Further Trial Preparation

#### 1. Motions in Limine

##### a. Briefing Schedule

Any party may file a motion in limine, which is a procedural mechanism to limit in advance testimony or evidence in a particular area. United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009) (quotation marks omitted). In the case of a jury trial, the Court's ruling gives Plaintiff and Defendant's counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury. Id. at 1111–12 (quotation marks omitted).

Any motion in limine by Defendant must be served on Plaintiff, and filed with the Court by **July 14, 2017**. Any motion in limine by Plaintiff must be served on Defendant, and filed with the Court by **July 17, 2017**. Any motion in limine must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

Any opposition to a motion in limine must be served on the other party, and filed with the Court by **July 28, 2017**. **No reply briefs shall be submitted by the parties.**

An order may be issued prior to trial resolving these motions. Otherwise, a motion in limine hearing will be held, telephonically, on **August 14, 2017 at 10:00 a.m.** in Courtroom 8 (BAM).

**Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.**

#### 2. Other

##### a. Trial Briefs

The parties are relieved of their obligation under Local Rule 285 to file a trial brief. If the parties wish to submit a trial brief, they must do so on or before **August 21, 2017**.

///

### b. Verdict Form

The Court will prepare the verdict form, which the parties will have the opportunity to review on the morning of trial. If the parties wish to submit a proposed verdict form, they must do so on or before **August 21, 2017**.

### c. Jury Instructions

The Court will prepare the jury instructions, which the parties will have the opportunity to review on the morning of trial. **The parties shall also meet and confer, by telephone or other means, to agree upon jury instructions for use at trial.** Defendant shall file proposed jury instructions as provided in Local Rule 163 on or before **August 21, 2017**. Plaintiff is not required to file proposed jury instructions but if he wishes to do so, he must file them on or before **August 21, 2017**.

All jury instructions shall indicate the party submitting the instruction (e.g., Plaintiff or Defendant), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the text of the instruction, and the legal authority supporting the instruction. **Defendant shall also provide the Court with a copy of her proposed jury instructions in Word format via e-mail at: bamorders@caed.uscourts.gov.**

The parties shall use Ninth Circuit Model Civil Jury Instructions to the extent possible. Ninth Circuit Model Jury Instructions SHALL be used where the subject of the instruction is covered by a model instruction. Otherwise, BAJI or CACI instructions SHALL be used where the subject of the instruction is covered by BAJI or CACI. All instructions shall be short, concise, understandable, and neutral and accurate statements of the law. Argumentative or formula instructions will not be given and must not be submitted. Quotations from legal authorities without reference to the issues at hand are unacceptable.

The parties shall, by italics or underlining, designate any modification of instructions from statutory or case authority, or any pattern or form instruction, such as the Ninth Circuit Model Jury Instructions, BAJI, CACI, or any other source of pattern instructions. The parties must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

The Court will not accept a mere list of numbers of form instructions from the Ninth Circuit Model Jury Instructions, CACI, BAJI, or other instruction forms. The proposed jury instructions must be in the form and sequence which the parties desire to be given to the jury.

All blanks to form instructions must be completed. Irrelevant or unnecessary portions of form instructions must be omitted.

### d. Proposed Voir Dire

Proposed voir dire questions, if any, shall be filed on or before **August 21, 2017**, pursuant to Local Rule 162.1.

### e. Statement of the Case

The parties may serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **August 21, 2017**. The Court will consider the parties' statements but will draft its own statement. The parties will be provided with the opportunity to review the Court's prepared statement on the morning of trial.

### f. Trial Exhibits

The original and two (2) copies of all trial exhibits, along with exhibit lists, shall be submitted to **Courtroom Deputy Harriet Herman no later than August 21, 2017**. The parties shall also serve one (1) copy of all trial exhibits, along with their exhibit list, on each other no later than **July 14, 2017**. This includes any demonstrative evidence the parties intend to use. Plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with 100 (e.g., PX-100, PX-101, etc.). Defendant's exhibits shall be pre-marked with the prefix "DX" and numbered sequentially beginning with 200 (e.g., DX-200, DX-201, etc.). Exhibits which are multiple pages shall be marked with page numbers in addition to the prefix and exhibit number, on each page of the exhibit (e.g., PX-100, page 1 of 2, PX-100, page 2 of 2, etc.). Defendant's exhibits shall also be separated by tabs.

**The parties are required to meet and confer, by telephone or other means, to agree upon and identify their joint exhibits, if any.** Joint exhibits shall be pre-marked with the prefix "JT" and numbered sequentially beginning with 1 (e.g., JT-1, JT-2, etc.), and Defendant's counsel shall submit the original and two (2) copies of the joint trial exhibits, with exhibit lists and

separated by tabs, no later than **August 21, 2017**.

## XXI. Objections to Pretrial Order

Written objections to the pretrial order, if any, must be filed within **ten (10) days** of the date of service of this order. Such objections shall specify the requested modifications, corrections, additions, or deletions.

## XXII. Compliance with Pretrial Order

Strict compliance with this order and its requirements is mandatory. The Court will strictly enforce the requirements of this pretrial order, and counsel and parties are subject to sanctions for failure to fully comply with this order and its requirements. The Court will modify the pretrial order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). The Court ADMONISHES the parties and counsel to obey the Federal Rules of Civil Procedure and the Court's Local Rules and orders. The failure to do so will subject the parties and/or counsel to sanctions as the Court deems appropriate.

IT IS SO ORDERED.

Dated: __July 11, 2017__          ___/s/ *Barbara A. McAuliffe*___
                                    UNITED STATES MAGISTRATE JUDGE